UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH GREGORY DUNBAR,

        Plaintiff,

Case No. 1:13-cv-1100

Hon. Robert J. Jonker

v.

JOHN PRELESNIK, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Cathleen Stoddard and Daniel Heyns' motion to dismiss (docket no. 10), defendant John Prelesnik's motion to dismiss (docket no. 13), plaintiff's motion for default judgment as to defendant John Prelesnik (docket no. 16), and plaintiff's *ex parte* "motion for preliminary injunction and restraining order" (docket no. 19).

    **I.**    **Background**

Plaintiff initiated this action by filing a document entitled "Motion to File Class Action." Although entitled a "motion," the Court's Clerk docketed this document as a complaint. *See* Compl. (docket no. 1). In an order for service entered on November 25, 2013, the Court conducted an initial review of the "complaint" pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c), and concluded that it was not subject to dismissal under those statutes. *See* Order for Service (docket no. 5). In a subsequent order entered on December 3, 2013, the Court observed that "[p]laintiff entitled his complaint (docket # 1), 'Motion to File Class Action,'" and denied the

request for class certification because plaintiff, an incarcerated *pro se* litigant, was not an appropriate representative of a class. *See* Order (docket no. 6).

In the complaint, plaintiff alleged that he and others "who are infected with Hepatitis C and B, as well as other prisoners who are infected with HIV, and kidney diseases" face an imminent danger to their health at the Richard A. Handlon Correctional Facility (MTU), where MDOC officials "refuse to remedy the contaminated water which has been continuously coming out of the fixtures yellowish to dark brown with the smell of raw sewage." *Id.* at ¶ 5. According to plaintiff, the condition has been going on since at least March 27, 2012, when he filed a grievance regarding the water. *Id.* at ¶ 7. Plaintiff's complaint listed three individuals responsible for this alleged condition: Warden John Prelesnik; acting Warden Cathleen Stoddard; and MDOC Director Daniel H. Heyns. *Id.* at ¶ 8. Plaintiff alleged that this condition violates his right to safe drinking water. *Id.* at ¶ 11. Plaintiff attached a Step II grievance response to his complaint, which referred to plaintiff's grievance that on March 27, 2012 and March 28, 2012, "the water in C unit was a golden orange color and unfit to use" resulting in inhumane treatment and a health risk. *See* Response (docket no. 1-1). The grievance response from Warden Prelesnik stated that "it appears the City of Ionia was flushing drains those days" and that "the city did not notify the facility so that units could be informed." *Id.* Plaintiff also included an "affidavit" signed by five prisoners stating that on September 19, 2013, they were forced to drink, shower, brush teeth, wash-up, and cook food in the microwave oven with "yellowish to light brown to brown water." Affidavit (docket no. 1-2).[1]

---

[1] The "affidavit" was not signed by a notary public, and it appears to be an attempt to submit an unsworn declaration under 28 U.S.C. § 1746. *See discussion, infra.*

For his injunctive relief, plaintiff asks that the Court order the MDOC to provide the prisoners at MTU with bottled water, order prisoner officials not to retaliate against him, and order an unbiased toxicologist to test the water. *Id.* at p. 3. Plaintiff also seeks compensatory and punitive damages in the amount of $6,000,000.00. *Id.* at p. 4.

## II. Defendants' motions to dismiss

Defendants Prelesnik, Stoddard and Heyns seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction) and 12(b)(4) (insufficient service of process). In support of their motions, defendants have submitted a cursory three-paragraph argument which seeks to dismiss plaintiff's action because plaintiff's "Motion to File Class Action" was improperly treated as a complaint and that "[s]erving Defendants with a motion was insufficient" under Fed. R. Civ. P. 12(b)(4). Stoddard and Heyns Brief at pp. 2-3 (docket no. 11); Prelesnik Brief (docket no. 14) (adopting argument of other defendants).

Defendants' argument ignores the Court's orders issued in this action. As discussed, this Court has issued two orders construing plaintiff's *pro se* "Motion to File Class Action" as a *pro se* civil rights complaint filed pursuant to 42 U.S.C. § 1983. *See* Orders (docket nos. 5 and 6). It is well established that allegations in an inartfully drafted *pro se* complaint are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Oftentimes, courts are called upon to construe *pro se* filings which have confusing or incorrect titles. *See*, *e.g.*, *Brown v. Kansas*, 512 Fed. Appx. 874 (10th Cir. 2013) (pre-trial detainees document entitled "Motion to File a Complaint and Request a Hearing" construed as a petition for habeas corpus under 28 U.S.C. § 2241); *Kenney v. Lambie*, No. CIV-12-935-W, 2012 WL 5954196 (W.D. Okla. Nov. 28, 2012) (*pro se* plaintiff's "Motion Petition for Extraordinary Writs" construed

3

as a complaint); *Ruff v. Collins*, No. 2:07-cv-007, 2007 WL 3025352 (Report and Recommendation) (S.D. Ohio Oct. 15, 2007), adopted in 2007 WL 4365678 (Order) (Dec. 12, 2007) ("[a]lthough plaintiff entitles this filing as a motion, this Court construes the filing as a complaint," citing *Haines*, 404 U.S. 519). Here, the Court construed plaintiff's motion as a complaint. Accordingly, defendants' motions to dismiss (docket nos. 10 and 13) should be denied.

### III. Plaintiff's motion for default judgment

Plaintiff has moved for a default judgment as to defendant Prelesnik. Entry of a default under Fed. R. Civ. P. 55(a) is a prerequisite to entry of a default judgment under Fed. R. Civ. P. 55(b). *Ramada Franchise Systems, Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004). Here, the Clerk's office has not entered a default against defendant Prelesnik pursuant to Fed. R. Civ. P. 55(a). Indeed, the Clerk's Office could not enter a default because defendant Prelesnik, who was served on January 14, 2014, filed a timely motion to dismiss on January 23, 2014. *See* Waiver of Service (docket no. 17). Accordingly, plaintiff's motion seeking default judgment against defendant Prelesnik (docket no. 16) should be denied.

### IV. Plaintiff's *ex parte* motion for injunctive relief

Plaintiff has also filed an "Ex Parte Motion for Preliminary Injunction and Restraining Order" (docket no. 19). In this motion, plaintiff claims that his life is in imminent danger because: "the [MDOC] injected me with the deadly disease Hepatitis C against my will in March of 2006 [] which is a conspiracy to commit murder"; the MDOC is denying treatment for the Hepatitis C; the MDOC is retaliating against him; the grievance coordinator is refusing to process his grievances; the MDOC is denying medically prescribed shoes; the MDOC is denying a medically prescribed acid reflux diet; he is being "assaulted and harassed by hand picked informant inmates";

his present cellmate Brian assaulted plaintiff on May 8, 2014, resulting in plaintiff receiving a black eye and Brian receiving a broken hand; the MDOC has placed false information in his prison file that he escaped from a mental institution, had an arson history and two prior rape convictions; and he is not allowed mail, phone calls or visitors. *Id.* at ¶¶ 1-10. For relief, plaintiff asks this Court to transfer him to a federal prison facility and "hand over" his mail. *Id.* at p. 4.

As an initial matter, the Court may not issue an *ex parte* preliminary injunction under these circumstances. Fed. Rules Civ. Proc. 65(a)(1) provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." *See Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 130-31 (5th Cir. 1990) ("[t]he courts consistently have treated rule 65(a)(1) as mandatory and have not hesitated to dissolve preliminary injunctions issued without notice or the opportunity for a hearing on disputed questions of fact and law"); *Consolidation Coal Company v. Disabled Miners of Southern West Virginia*, 442 F.2d 1261, 1269 (4th Cir. 1971) (court's issuance of an *ex parte* preliminary injunction "was manifestly error, because Rule 65(a)(1) is explicit that 'no preliminary injunction shall be issued without notice to the adverse party'").

To the extent that plaintiff seeks to obtain a temporary restraining order, he has failed to support such a claim. Fed. R. Civ. P. 65(b)(1) provides for the issuance of a TRO as follows:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Plaintiff is not entitled to a TRO because he has failed to present an affidavit or verified complaint containing "specific facts that clearly show that immediate and irreparable injury, loss, or damage will result to [him] before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).  Plaintiff's "Affidavit in Support of Motion for Preliminary Injunction and Restraining Order Relief Ex Parte" (docket no. 20) is neither an affidavit nor an unsworn declaration under penalty of perjury as allowed under 28 U.S.C. § 1746.  Plaintiff's supporting "affidavit" did not contain a notary jurat vouching for the truthfulness of the signed record.  *See* M.C.L. § 55.265(a) (defining a "jurat" as "a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in the presence of the notary public a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed record").  Rather, the affidavit included only a notary stamp and signature of the plaintiff.  The absence of a jurat or other evidence of verification requires a court to find that the document fails to constitute an affidavit. *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished).  *See Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930) ("[a] purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all").

Furthermore, the supporting affidavit did not include the required verification under § 1746, i.e., "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)". Rather, plaintiff's affidavit included a statement which was less straightforward, suggesting that he would be willing to testify as to certain facts at a future court date: "I, Joseph Gregory Dunbar, declares [sic] under the Penalty for Perjury that I am competent and will truthfully testify to the

6

statement of facts in open court under oath that the following is true and correct . . ." *See* Affidavit (docket no. 20). This is not quite the same thing as the unequivocal, and enforceable, statement that the facts are true and correct. Accordingly, the statements set forth in the supporting affidavit do not contain legally sufficient evidence to support plaintiff's claim that he suffers from "immediate and irreparable injury."

Furthermore, even if plaintiff had submitted a proper affidavit or declaration, the facts set forth do not establish that he is entitled to a TRO without notice. In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Rock & Roll Hall of Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998).

Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and

Executive Branches of our Government, not the Judicial." *Id.* at 548. For these reasons, a plaintiff attacking administrative decisions about issues of security and discipline must meet a heavy burden.

In his motion, plaintiff asks to be transferred to a federal prison because his life is in imminent danger, with the most immediate concerns being his infection with Hepatitis C, his lack of medical treatment, and being assaulted by his cellmate. Ex Parte Motion at ¶¶ 11-12. However, the matters raised in that motion are unrelated to plaintiff's allegations in this lawsuit, i.e., that the water at MTU was contaminated on March 27, 2012, March 28, 2012, and September 19, 2013. While "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945). *See, e.g, Ball v. Famiglio*, 396 Fed. Appx. 836, 837 (3d Cir.2010) (plaintiff not entitled to preliminary injunction on claims not pending in complaint); *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) (where a plaintiff brought a *qui tam* action against the city and others for knowingly and improperly obtaining funds from several federal agencies for development or improvement of properties in minority-concentrated areas of city, the plaintiff's request for preliminary injunction against city ordinance allowing members of public to speak for only five minutes each at conclusion of city council meetings was properly denied because it was of a different character from relief sought and wholly unrelated to issues raised); *Thomas v. DeBoer*, No. 1:08-cv-744, 2009 WL 4068438 (W.D. Mich. Nov. 23, 2009) (prisoner's motion for preliminary injunction denied where it sought to enjoin three non-parties who allegedly engaged in recent retaliatory acts that were unrelated to the retaliatory acts at issue in the lawsuit); *Atakpu v. Lawson*, No. 1:05-cv-524, 2006 WL 3803193 at *1-2 (S. D. Ohio Nov. 28, 2006) (the plaintiff prisoner's

motion seeking injunctive relief for harassment and retaliation was denied as unrelated to the prisoner's complaint, which alleged denial of his constitutional rights for inadequate medical care, noting that a "court may not grant a preliminary injunction when the issues raised in the motion are entirely different from those raised in the complaint"). Accordingly, plaintiff's motion for a preliminary injunction and a TRO (docket no. 19) should be denied.

### V. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motions to dismiss (docket nos. 10 and 13) be **DENIED.**

I further recommend that plaintiff's motion for default judgment as to defendant Warden John Prelesnik (docket no. 16) and plaintiff's *ex parte* motion for a preliminary injunction and TRO (docket no. 19) be **DENIED**.


Dated: September 3, 2014        /s/ Hugh W. Brenneman, Jr.
                                HUGH W. BRENNEMAN, JR.
                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).