UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH GREGORY DUNBAR,

        Plaintiff,

Case No. 1:13-cv-1100

Hon. Robert J. Jonker

v.

JOHN PRELESNIK, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on the following papers filed by plaintiff: "Ex parte motion for preliminary injunction and restraining order" (docket no. 21); a one-page letter to the Court which the Clerk's Office docketed as a "Motion to transfer to new facility" (docket no. 22); a "Motion for injunctive relief / restraining order" (docket no. 33); a motion for an evidentiary hearing (docket no. 35); and two letters to the Court, each of which the Clerk's Office docketed as a "Motion to transfer to new facility" (docket nos. 38 and 40).

        **I.**        **Background**

Plaintiff initiated this action by filing a document entitled "Motion to File Class Action." *See* Compl. (docket no. 1). In an order for service entered on November 25, 2013, the Court construed the motion as plaintiff's complaint, conducted an initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c), and concluded that it was not subject to dismissal under these statutes. *See* Order for Service (docket no. 5). In a subsequent order entered

on December 3, 2013, the Court observed that "[p]laintiff entitled his complaint (docket # 1), 'Motion to File Class Action,'" and denied the request for class certification because plaintiff, an incarcerated *pro se* litigant, was not an appropriate representative of a class. *See* Order (docket no. 6).

In the complaint, plaintiff alleged that he and others "who are infected with Hepatitis C and B, as well as other prisoners who are infected with HIV, and kidney diseases" face an imminent danger to their health at the Richard A. Handlon Correctional Facility (MTU), where MDOC officials "refuse to remedy the contaminated water which has been continuously coming out of the fixtures yellowish to dark brown with the smell of raw sewage." *Id.* at ¶ 5. According to plaintiff, the condition has been going on since at least March 27, 2012, when he filed a grievance regarding the water. *Id.* at ¶ 7. Plaintiff's complaint listed three individuals responsible for this alleged condition: Warden John Prelesnik; acting Warden Cathleen Stoddard; and MDOC Director Daniel H. Heyns. *Id.* at ¶ 8. Plaintiff alleged that this condition violates his right to safe drinking water. *Id.* at ¶ 11. Plaintiff attached a Step II grievance response to his complaint, which referred to plaintiff's grievance that on March 27, 2012 and March 28, 2012, "the water in C unit was a golden orange color and unfit to use" resulting in inhumane treatment and a health risk. *See* Response (docket no. 1-1). The grievance response from Warden Prelesnik stated that "it appears the City of Ionia was flushing drains those days" and that "the city did not notify the facility so that units could be informed." *Id.* Plaintiff also included an "affidavit" signed by five prisoners stating

that on September 19, 2013, they were forced to drink, shower, brush teeth, wash-up, and cook food in the microwave oven with "yellowish to light brown to brown water." Affidavit (docket no. 1-2).[1]

Plaintiff's action seeks injunctive and monetary relief. For his injunctive relief, plaintiff asks that the Court order the MDOC to provide the prisoners at MTU with bottled water, order prisoner officials not to retaliate against him, and order an unbiased toxicologist to test the water. *Id.* at p. 3. Plaintiff also seeks compensatory and punitive damages in the amount of $6,000,000.00. *Id.* at p. 4.

### II.   Discussion

#### A.   Plaintiff's first motion for a preliminary injunction

Plaintiff's motions seek the same remedy, i.e., transfer to a federal facility. The Court has been down this road before. Plaintiff previously filed an "Ex Parte Motion for Preliminary Injunction and Restraining Order" (docket no. 19), which the Court summarized as follows:

> In this motion, plaintiff claims that his life is in imminent danger because: "the [MDOC] injected me with the deadly disease Hepatitis C against my will in March of 2006 [] which is a conspiracy to commit murder"; the MDOC is denying treatment for the Hepatitis C; the MDOC is retaliating against him; the grievance coordinator is refusing to process his grievances; the MDOC is denying medically prescribed shoes; the MDOC is denying a medically prescribed acid reflux diet; he is being "assaulted and harassed by hand picked informant inmates"; his present cellmate Brian assaulted plaintiff on May 8, 2014, resulting in plaintiff receiving a black eye and Brian receiving a broken hand; the MDOC has placed false information in his prison file that he escaped from a mental institution, had an arson history and two prior rape convictions; and he is not allowed mail, phone calls or visitors. *Id.* at ¶¶ 1-10. For his relief, plaintiff asks this Court to transfer him to a federal prison facility and "hand over" his mail. *Id.* at p. 4.

Report and Recommendation (docket no. 23 at pp. ID## 98-99).

---

[1] The Court notes that this "affidavit" was not signed by a notary public. Rather, it appears to be an unsworn declaration under 28 U.S.C. § 1746.

The Court denied plaintiff's first motion for a preliminary injunction both on procedural grounds and on the merits. The motion was procedurally defective because plaintiff submitted an insufficient supporting affidavit and sought an *ex parte* preliminary injunction. With respect to the merits, the Court found as follows:

> Furthermore, even if plaintiff had submitted a proper affidavit or declaration, the facts set forth do not establish that he is entitled to a TRO without notice. In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Rock & Roll Hall of Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998).
>
> Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548. For these reasons, a plaintiff attacking administrative decisions about issues of security and discipline must meet a heavy burden.
>
> In his motion, plaintiff asks to be transferred to a federal prison because his life is in imminent danger, with the most immediate concerns being his infection with Hepatitis C, his lack of medical treatment, and being assaulted by his cellmate. Ex Parte Motion at ¶¶ 11-12. However, plaintiff's motion for a TRO should be denied because the matters raised in that motion are unrelated to plaintiff's allegations in this lawsuit, i.e., that the water at MTU was contaminated on March 27, 2012, March 28, 2012, and September 19, 2013. While "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945). *See, e.g, Ball v. Famiglio*, 396 Fed. Appx. 836, 837 (3d Cir.2010) (plaintiff not entitled to preliminary injunction

    on claims not pending in complaint); *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) (where a plaintiff brought a *qui tam* action against the city and others for knowingly and improperly obtaining funds from several federal agencies for development or improvement of properties in minority-concentrated areas of city, the plaintiff's request for preliminary injunction against city ordinance allowing members of public to speak for only five minutes each at conclusion of city council meetings was properly denied because it was of a different character from relief sought and wholly unrelated to issues raised); *Thomas v. DeBoer*, No. 1:08-cv-744, 2009 WL 4068438 (W.D. Mich. Nov. 23, 2009) (prisoner's motion for preliminary injunction denied where it sought to enjoin three non-parties who allegedly engaged in recent retaliatory acts that were unrelated to the retaliatory acts at issue in the lawsuit); *Atakpu v. Lawson*, No. 1:05-cv-524, 2006 WL 3803193 at *1-2 (S. D. Ohio Nov. 28, 2006) (the plaintiff prisoner's motion seeking injunctive relief for harassment and retaliation was denied as unrelated to the prisoner's complaint, which alleged denial of his constitutional rights for inadequate medical care, noting that a "court may not grant a preliminary injunction when the issues raised in the motion are entirely different from those raised in the complaint"). Accordingly, plaintiff's motion for a preliminary injunction and a TRO (docket no. 19) should be denied.

*Id.* at pp. ID## 101-03; Order Adopting Report and Recommendation (docket no. 25).

    **B. Plaintiff's motions related to injunctive relief including transfer to a federal correctional facility**

Now, plaintiff has filed six more motions related to his request for injunctive relief. As with plaintiff's first motion (docket no. 19), these motions seek injunctive relief for reasons unrelated to the three alleged instances of discolored water at the prison on March 27 and 28, 2012, and September 19, 2013.

    **1. Plaintiff's "Ex parte motion for preliminary injunction and restraining order" (docket no. 21)**

As an initial matter, this request seeks an *ex parte* preliminary injunction. the Court may not issue an *ex parte* preliminary injunction. Fed. Rules Civ. Proc. 65(a)(1) provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." *See Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 130-31 (5th Cir. 1990) ("[t]he courts consistently have treated rule 65(a)(1) as mandatory and have not hesitated to dissolve preliminary injunctions issued without

notice or the opportunity for a hearing on disputed questions of fact and law"); *Consolidation Coal Company v. Disabled Miners of Southern West Virginia*, 442 F.2d 1261, 1269 (4th Cir. 1971) (court's issuance of an *ex parte* preliminary injunction "was manifestly error, because Rule 65(a)(1) is explicit that 'no preliminary injunction shall be issued without notice to the adverse party'").

Furthermore, this motion seeks injunctive relief for matters unrelated to plaintiff's claims in this action. Specifically, plaintiff claims that he is in imminent danger for the following reasons: (1) the MDOC previously injected him with Hepatitis C; (2) the MDOC did not provide treatment for a fractured skull in 2002; (3) the MDOC planted false information in his prison files that he escaped from a mental institution (grieved in 2011); (4) the MDOC planted false information in his prison files that he had a history of arson (grieved in 1998); (5) the MDOC removed plaintiff from a medically prescribed acid reflux diet; (6) the MDOC refused to prescribe medically prescribed gum shoes; and (7) the MDOC is using a cellmate to torture him. Ex parte motion (docket no. 21 at pp. ID## 76-79). The issue before the Court is whether plaintiff is entitled to an injunction based on three incidents involving the appearnce of yellowish/brown water at MTU. An injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines*, 325 U.S. at 220. Accordingly, plaintiff's *ex parte* motion (docket no. 21) should be denied.

    **2. Plaintiff's "Motion to transfer to new facility" (docket no. 22)**

This document is not a motion, but a one-page transmittal letter to the District Judge which accompanied the *ex parte* motion, referred to an attack by another prisoner in September 2002 (more than a decade ago), and cited a case regarding double-bunking. *See* W.D. Mich. LCivR

7.1(a) ("Briefs shall not be submitted in the form of a letter to the judge").  Accordingly, this "motion" (docket no. 22) should be denied.

> **3.  Plaintiff's "Motion for injunctive relief / restraining order" (docket no. 33) and a motion for an evidentiary hearing (docket no. 35)**

This motion for injunctive relief briefly mentions that plaintiff's action involves alleged contaminated drinking water "which has the smell of raw sewage from time to time and turns from yellow to brown."  Motion for injunctive relief (docket no. 33 at p. ID# 180).  However, the motion seeks injunctive relief for a number of other reasons: (1) the MDOC injected plaintiff with Hepatitis C in retaliation for plaintiff's litigation; (2) the MDOC plotted against plaintiff "to make it seem [plaintiff] was receiving mental health treatment"; (3) the MDOC planted false information in plaintiff's prison files that he escaped from a mental institution; (4) the MDOC has "non-stop" planted inmates into plaintiff's cell to harass, assault, inform on and steal legal documents from him; (5) that after injecting plaintiff with Hepatitis C, the MDOC refused plaintiff medical treatment and denied him bottled water to "speed up [his] death"; (6) that plaintiff is being tortured daily; (7) that the MDOC injected plaintiff with Hepatitis C as part of a conspiracy to commit murder by poisoning in violation of M.C.L. § 750. 316; (8) that the MDOC took plaintiff off of his prescribed medical diet; (9) that MDOC officials refuse to give plaintiff his medically prescribed athletic shoes; (10) that plaintiff is not allowed to communicate by telephone or mail, have family visits, or contact the NAACP, ACLU, or attorneys "to cover up that [plaintiff] is innocent and injected with Hepatitis C by prison officials"; (11) that a Lapeer County Circuit Court Judge dismissed his petition for a state writ of habeas corpus; and (12) that plaintiff has suffered irreparable harm and must be transferred to a federal prison.  *Id.* at pp. ID## 181-84.

Plaintiff also filed an affidavit in support of this motion.  *See* Affidavit (docket no. 34).  In this affidavit, plaintiff states a number of matters unrelated to his lawsuit: (1) that he is innocent for the rape and possession of a weapon in the commission of a felony on June 8, 1998; (2) that he filed a class action lawsuit in the Eastern District of Michigan stating that the citizens warehoused in Michigan prisons were convicted in violation of the constitution; (3) that in March 2006 unnamed individuals at the Ryan Regional Correctional Facility injected plaintiff with Hepatitis C as part of a conspiracy to commit murder by poisoning; (4) that plaintiff was tricked into the injection because he thought it was an immunization; (5) that a doctor told plaintiff that he "would not live much longer" after the injection; (6) that he has never received medical treatment for Hepatitis C; (7) that MDOC officials took plaintiff off his "medically prescribed Acid Reflux diet without authorization"; (8) that he was authorized to wear prescription gym shoes in 2009 but that he only gets "no name shoes that wear out quickly and hurt my feet"; (9) that MDOC officials planted false evidence in his prison records that he escaped from a mental institution"; (10) that he is not allowed to communicate with family, friends, lawyers or organizations; (11) that although he has smuggled out mail he has received no responses; (12) that the MDOC had plaintiff assaulted by a religious gang member in 2002 which fractured his skull; and (13) that the MDOC continues to plant inmates in plaintiff's cell for the purpose of harassing, threatening, watching and assaulting him.  Affidavit (docket no. 34 at pp. ID## 185-87.  At the end of the affidavit, plaintiff makes the conclusory statement that "the water still comes out yellowish to brown from time to time."  *Id.* at p. ID# 188.  While plaintiff's complaint alleged three discrete instances of the yellow / brownish water in 2012 and 2013, his affidavit does not reference these dates, but states that as of November

12, 2014 "I have been here three and a half years drinking, showering, brushing my teeth and eating food cooked with contaminated water not receiving medical treatment." *Id.*

Plaintiff's motion seeks injunctive relief for incidents which occurred as long ago as 1998, 2002 and 2006. This motion is essentially a longer version of plaintiff's first motion for a preliminary injunction, paying vague lip service to the issue in this lawsuit, and then seeking a court-ordered transfer out of MDOC custody based on various conspiracy theories, including an illegal rape conviction in 1998 and an MDOC plot to murder him by poison. The issue before the Court is whether plaintiff is entitled to an injunction based on three incidents involving the appearance of yellowish/brown water at MTU. Plaintiff's motion for injunctive relief has little to do with these incidents. An injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines*, 325 U.S. at 220. Accordingly, plaintiff's motions for injunctive relief (docket no. 33) and for an evidentiary hearing (docket no. 35) should be denied.

### 4. Plaintiff's letters (docket nos. 38 and 40)

Finally, plaintiff raises a similar litany of issues in two letters sent to a District Judge requesting transfer to a federal prison for his safety (docket nos. 38 and 40). As with the previous letter to the Judge (docket no. 22), these two letters are not "motions" and should not be treated as such. Accordingly, plaintiff's letter "motions" should be denied as improvidently filed.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's motions (docket nos. 21, 22, 33, 35, 38 and 40) be **DENIED**.

   I further recommend that any further papers filed by plaintiff requesting transfer to a federal facility be rejected.

Dated:  March 11, 2015        /s/ Hugh W. Brenneman, Jr.
                HUGH W. BRENNEMAN, JR.
                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).