UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH GREGORY DUNBAR,

        Plaintiff,

Case No. 1:13-cv-1100

Hon. Robert J. Jonker

v.

JOHN PRELESNIK, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by defendants John Prelesnik, Cathleen Stoddard and Daniel H. Heyns (docket no. 26).

    **I.**    **Plaintiff's complaint**

In the complaint, plaintiff alleged that he and others "who are infected with Hepatitis C and B, as well as other prisoners who are infected with HIV, and kidney diseases" face an imminent danger to their health at the Richard A. Handlon Correctional Facility (MTU), where MDOC officials "refuse to remedy the contaminated water which has been continuously coming out of the fixtures yellowish to dark brown with the smell of raw sewage." *Id.* at ¶ 5. According to plaintiff, the condition has been going on since at least March 27, 2012, when he filed a grievance regarding the water. *Id.* at ¶ 7. Plaintiff's complaint listed three individuals responsible for this alleged condition: Warden John Prelesnik; acting Warden Cathleen Stoddard; and MDOC Director Daniel H. Heyns. *Id.* at ¶ 8. Plaintiff alleged that this condition violates his right to safe drinking

water. *Id.* at ¶ 11. Plaintiff attached a Step II grievance response to his complaint, which referred to plaintiff's grievance that on March 27, 2012 and March 28, 2012, "the water in C unit was a golden orange color and unfit to use" resulting in inhumane treatment and a health risk. *See* Response (docket no. 1-1). The grievance response from Warden Prelesnik stated that "it appears the City of Ionia was flushing drains those days" and that "the city did not notify the facility so that units could be informed." *Id.* Plaintiff alleged that the water incident violated his constitutional rights. For his injunctive relief, plaintiff asks that the Court order the MDOC to provide the prisoners at MTU with bottled water, order prisoner officials not to retaliate against him, and order an unbiased toxicologist to test the water. *Id.* at p. 3. Plaintiff also seeks damages in the amount of $6,000,000.00. *Id.* at p. 4.

## II. Defendants' motion for summary judgment

### A. Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

2

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment claim

#### 1. Legal standard for Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff seeks relief for alleged violations of his rights under the Eighth Amendment.[1] The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "The contemporary standards of civilized decency that currently prevail in society determine whether conditions of confinement are cruel and unusual." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004), citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8.

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. To establish the objective component, extreme deprivations are required and only deprivations denying "the minimal civilized measure of life's necessities" are grave enough to create a violation of the Cruel and Unusual Punishment Clause. *Hadix*, 367 F.3d at 525, citing *Hudson*, 503 U.S. at 9, and quoting *Rhodes*, 452 U.S. at 347.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the

---

[1] The Court notes that plaintiff has also alleged a Fourteenth Amendment claim substantive due process claim. *See* Compl. at PageID.3. This claim, however, is subsumed by the Eighth Amendment claim. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims") (internal quotation marks omitted).

subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 2. Discussion

#### a. Objective component

Deprivation of drinking water can state an Eighth Amendment claim. *See Dellis v. Corrections Corporation of America*, 257 F.3d 508, 512 (6th Cir. 2001) (plaintiff's allegation that he was deprived of drinking for three days when the prison's water supply went out stated a claim for relief). MTU does not treat its own water. In his affidavit, defendant Prelesnik, the retired warden at MTU, stated that "MTU receives its water from the City of Ionia which conducts regular water tests." John Prelesnik Aff. (docket no. 27-2). Non-party Gene Woods, the MDOC's Southern Region Sanitarian, submitted an affidavit addressing the City's testing. Gene Wood Aff. (docket no. 27-5, PageID.138-140). His affidavit included copies of laboratory testing from the City of Ionia for the water which goes to MTU. *Id.* The tests were taken on March 6, 2012, March 22, 2012, April 3, 2012, April 17, 2012, September 2, 2014 and September 16, 2014. *Id.* at PageID.141-54. It is undisputed that these tests showed the absence of bacteriologic contamination during various times in March and April 2012, and September 2014. *Id.* at PageID.138-39 and 141-54. However, defendants have not provided any test results with respect to the relevant time frame of March 27 and March 28, 2012. Viewing this evidence in the light most favorable to the non-moving party

(plaintiff), the Court concludes that a question of fact exists with respect to the water quality at MTU on March 27 and March 28, 2012.

### b. Subjective component

However, even though a question of fact exists with respect to the objective component of plaintiff's Eighth Amendment claim, he has not established the subjective component. There is no evidence that defendants knew of and disregarded an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. As an initial matter, there is no evidence that either defendants Heyns or Stoddard were involved in the alleged incident. MDOC Director Heyns stated in his affidavit that he had no contact or personal involvement with plaintiff. *See* Heyns Aff. (docket no. 27-4). Defendant Stoddard was the deputy warden at Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan, and was not at MTU when the incident occurred on March 27 and 28, 2012.[2]

Finally, as discussed, defendant Prelesnik stated in his affidavit that MTU received its water from the City of Ionia, which tested the water regularly. *See* John Prelesnik Aff. There was no evidence that Warden Prelesnik knew of any problem with the water system. In this regard, water testing conducted in the days both before the alleged incident (i.e., March 6th and 22nd) and after the alleged incident (i.e., April 3rd and 17th) showed an absence of bacteriologic contamination. *See* Gene Wood Aff. In his grievance response, Warden Prelesnik advised plaintiff that on March 27th and 28th "it appears the City of Ionia was flushing drains those days" and that "the city did not notify the facility so that units could be informed." *See* Grievance Response. Plaintiff does not rebut any

---

[2] In her affidavit, defendant Stoddard stated that she was the deputy warden at IBC and had assignments at two other correctional facilities, one of which was MTU at various times in 2012, 2013 and 2014: from June 6, 2012 through June 23, 2012; from August 21, 2012 through November 8, 2012; and from November 21, 2012 through January 18, 2014. Cathleen Stoddard Aff. (docket no. 27-3).

of these facts in his affidavit, which discussed a number of issues not related to the alleged events of March 27th and 28th (e.g., plaintiff's litigation history, a claim that he was injected with Hepatitis C in 2006, his grievances requesting transfer from MTU, and statements that maintenance workers at the prison attempted to clean pipes of raw sewage sometime after he filed this lawsuit).  *See* Plaintiff's Aff. (docket no. 32).[3]  Plaintiff also relies on an "Affidavit in support of a motion to file a motion for a class action lawsuit" signed by five prisoners stating that on September 19, 2013, they were forced to drink, shower, brush teeth, wash-up, and cook food in the microwave oven with "yellowish to light brown to brown water."  *See* Affidavit (docket no. 1-2).  However, this document does not address the incidents of March 27 and 28, 2012 at issue in this action.

In summary, there is no evidence that defendant Prelesnik knew of and disregarded an excessive risk to inmate health or safety from contaminated water at MTU.  *See Farmer*, 511 U.S. at 837.  Plaintiff has not established the subjective component of his Eighth Amendment claim.  Accordingly, defendants' motion for summary judgment should be granted.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants John Prelesnik, Cathleen Stoddard and Daniel H. Heyns (docket no. 26) be **GRANTED** and that this action be **TERMINATED**.

Dated:  January 28, 2016        /s/ Ray Kent
                                RAY KENT
                                United States Magistrate Judge

---

[3] The Court notes that in his response, plaintiff contends, incorrectly, that defendants' supporting affidavits are "unsworn" or "uncertified."  *See* Plaintiff's Response (docket no. 31, PageID.172).

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).